[Crim. No. 6058.   In Bank.   May 1, 1959.]

In re JEAN L. CHESTER, on Habeas Corpus.

Winters & Winters, Robert K. Winters, Beeman & Johnson and William L. Beeman for Petitioner.

Edmund G. Brown and Stanley Mosk, Attorneys General, Doris H. Maier and J. M. Sanderson, Deputy Attorneys General, for Respondent.

McCOMB, J.—Jean L. Chester, an inmate of the California Medical Facility, Vacaville, petitioned for a writ of habeas corpus. We issued an order to show cause and appointed a referee to take evidence and make findings on these questions: (1) Was petitioner advised of his right to counsel at the preliminary examination? (2) Did he intelligently waive his right to counsel at the time of the preliminary hearing when he knew, or should have known, of his right thereto? (3) Was petitioner advised of his right to counsel and to have counsel appointed for him in the proceedings in the superior court? (4) Did he intelligently waive his right to counsel in the superior court when he knew, or should have known, of his right thereto?

The referee found (1) that petitioner was not advised of his right to counsel at the preliminary hearing held on June 16, 1947, but that he was fully advised of such right at his arraignment in the justice court on May 28, 1947; (2) that petitioner waived his right to counsel at the time of his arraignment when he knew, or should have known, of his right thereto; (3) that petitioner was advised as to his right to have counsel appointed to represent him when he was arraigned in the superior court; and (4) that petitioner waived his right to counsel when he knew, or should have known, of his right thereto.

We are thus presented with this question: *Does the record disclose (a) that petitioner was advised of his right to have counsel appointed to represent him when he was arraigned in the superior court and (b) that he waived his right to counsel at the time of his arraignment when he knew, or should have known, of his right thereto?*

*Yes.* These rules are here applicable: ▮ (1) In a habeas corpus proceeding, after judgment, based on an alleged denial of the right to counsel, the court record of the proceedings on arraignment creates a presumption of verity. (*In re Connor,* 16 Cal.2d 701, 707 et seq. [108 P.2d 10].)\* ▮ (2) The provisions for arraignment at the preliminary examination are an integral part of such examination. (Pen Code., § 858 et seq.; *In re Tedford,* 31 Cal.2d 693 [192 P.2d 3].)

▮ In the present case, the minute entry on the docket of the magistrate's court where petitioner was arraigned on May 28, 1947, reads as follows: ''Defendant duly arraigned, being by the Court informed of all his legal rights—including . . . his right to counsel at all stages of the proceedings. . . .''

In addition to the presumption that petitioner was informed of his legal right to counsel at all stages of the proceedings, the referee had before him the testimony of Judge Brusatori, who testified in response to a question as to whether he informed defendants of their right to counsel, ''. . . Then I would advise them it was their right to be represented by counsel at all stages.'' He further testified that he did not inform petitioner of his right to counsel at the preliminary hearing on June 16, 1947, since petitioner had already been informed at the arraignment.

---

\*Mr. Justice Shenk, in speaking for this court in *In re Connor, supra,* at page 707 et seq., says: ''The docket entry recording the proceedings in the municipal court at the time of petitioner's preliminary arraignment of January 27, 1932, and preliminary examination of February 1, 1932, states: 'Court informs defendant of the charge against defendant and of defendant's right to the aid of counsel in every stage of the proceedings.' This statement is part of the printing in a printed form of docket sheet, which was used to record the proceedings had on January 27th and February 1st. At that time, according to an affidavit of the clerk of the court, it was customary to prepare the docket from the clerk's rough minutes, and after comparison of the two to insure accuracy, to then destroy the rough minutes. The clerk's affidavit also contained the averment that the rough minutes pertaining to petitioner's arraignment of January 27th had been destroyed. There is nothing in these facts, or in the method shown to have been employed in preparing the record, or in any other matter brought out by petitioner, which would cast a doubt upon the verity and authenticity of the docket entry stating that petitioner was duly informed of his right to counsel. The presumption is that in preparing the record, official duty was regularly performed. (Code Civ. Proc., § 1963, subd. 15.) The record imports absolute verity, and in this collateral proceeding must be accepted as speaking the truth (*Halpern* v. *Superior Court,* 190 Cal. 384 [212 P. 916]; *People* v. *Figueroa,* 134 Cal. 159 [66 P. 202]; *Govea* v. *Superior Court,* 26 Cal.App.2d 27 [78 P.2d 433]). It is therefore of itself sufficient to refute petitioner's claim that he was then denied his constitutional right with respect to the aid of counsel.''

In addition, petitioner himself admitted that he was informed at the arraignment of such right. The question and petitioner's answer were as follows: "Q. What, if anything, was said to you in regard to an attorney to defend you? A. He said I had the right to hire an attorney."

Also, with respect to the preliminary hearing, petitioner testified as follows: "Q. Would you tell the court what was said at that preliminary hearing? A. In what manner? Q. Just in regard to an attorney. A. He said that he saw I was in court without a lawyer, and that if I wanted—was willing to go ahead on it, and I said, yes, sir, I was."

Petitioner further testified that he knew he had a right to an attorney at the superior court hearing. The following question asked petitioner and his answer thereto, relative to the superior court hearing, appear in the record: "Q. Did you know at that time that you had the right to an attorney? A. I knew that I could hire an attorney, yes, sir."

With respect to whether petitioner was informed of his right to have counsel appointed for him in the superior court if he was without funds, the record discloses that there was evidence before the referee which supports his finding that petitioner was so advised. Judge Butler, who presided at the superior court hearing, testified as follows: "Q. Will you state whether or not it is true that when arraigning a defendant, and that defendant answered that he did not have counsel, will you state whether or not it is true that you offered to appoint counsel for that defendant? A. I varied the practice. If a defendant had no counsel I would ask him if he wished time in which to send for counsel of his own choosing; if he said 'no,' then I would ask him if he had means to pay counsel, if he said he had none, then I would say, the Court will appoint counsel for you."

Judge Brusatori testified relative to Judge Butler's custom of informing defendants of their right to counsel, as follows:

"Q. Do you know if Judge Butler had any particular habit or custom in arraigning a defendant? A. Yes, I do. Q. Will you tell us what that was? A. . . . and his custom was to . . . tell the defendant of his right to be represented by counsel, and would inquire whether or not the man had counsel; of his right to have counsel appointed for him if he were without means to engage his own counsel."

Likewise, Mr. Albert E. Bagshaw, the District Attorney of Marin County in 1947, testified thus: "Q. Do you know whether Judge Butler had any habit or custom in the manner

in which he arraigned a defendant upon an information? A. Yes, I do. Q. Would you describe the custom in that regard? A. . . . Judge Butler would . . . always advise the defendant as to the services of counsel at each stage; always ask the defendant if he had counsel, and if he didn't the Judge would ask if he had means of procuring counsel. With the San Quentin cases where he did not have counsel the Judge would always advise him he had the right to have counsel appointed by the court.''

Since the record discloses (i) that petitioner was informed of his right to have counsel appointed to represent him when he was arraigned in the superior court and (ii) that he waived his right to counsel at the time of his arraignment, it is clear that he has not met the burden of proof resting upon him with respect to his claim that he was denied the right to counsel.

The order to show cause is discharged, and the petition is denied.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Petitioner's application for a rehearing was denied May 27, 1959.