[Crim. No. 27972. Second Dist., Div. Five. Jan. 20, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD LEE REECE, Defendant and Appellant.

[Crim. No. 28581. Second Dist. Div. Five. Jan. 20, 1977.]

In re RONALD LEE REECE on Habeas Corpus.

## COUNSEL

John Alan Montag, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Frederick R. Millar, Jr., and John R. Gorey, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KAUS, P. J.**—In a petition for writ of habeas corpus (2d Crim. 28581) and in a purported appeal from the trial court's denial of a petition for writ of error *coram nobis* (2d Crim. 27972), defendant Ronald Lee Reece asserts that punishment imposed by the trial court was cruel and unusual. We deny the petition for a writ of habeas corpus and dismiss the appeal in the *coram nobis* proceeding.

### FACTS

In May 1971, defendant was sentenced to prison for issuing checks without sufficient funds in case number A547941.[1] In June 1971, in case number A263707, defendant, having been found guilty of nine counts of issuing checks without sufficient funds (Pen. Code, § 476a) was sen-

[1]Defendant's appeal in case number A547941, was dismissed in August 1976, and that case is final for all purposes. (2d Crim. No. 20438.)

tenced to three consecutive prison sentences on grouped counts.[2] The three consecutive sentences were to run consecutively to the sentence imposed in case number 547941.

Defendant was denied parole in 1973 and again in 1974. In 1975, a parole date of January 15, 1978 was set, and defendant's total term was set in both cases A547941 and A263707, resulting in a final release date of June 15, 2024.

In October 1975, in case number A263707, defendant filed a petition for writ of error *coram nobis* in the trial court. It was denied. He then appealed. The People have moved to dismiss the appeal. (2d Crim. No. 27972.) In May 1976, defendant filed a petition for a writ of habeas corpus with this court. (2d Crim. No. 28581.)

Defendant's grievance in both proceedings is the same: The imposition of four[3] consecutive sentences, resulting in an ultimate release date of 2024, constitutes cruel and unusual punishment, as applied to the offense of issuing checks without sufficient funds.

DISCUSSION

*Coram Nobis.*

We grant the Attorney General's petition to dismiss defendant's purported appeal in the *coram nobis* proceeding. The consecutive sentences were imposed in 1971. Defendant knew then that the maximum punishment for issuing bad checks was 14 years. To the extent that the sentence is cruel and unusual on its face, defendant offers no excuse for the delay of more than four years in filing his petition. (E.g., *People* v. *Brady* (1973) 30 Cal.App.3d 81, 87-88 [105 Cal.Rptr. 280].) In any event, we dispose of the issue raised below.

*Habeas Corpus.*

This petition raises different issues. Our Supreme Court has indicated that habeas corpus is the proper means of challenging a sentence which, as applied, is cruel or unusual. (*People* v. *Wingo* (1975) 14 Cal.3d 169, 183 [121 Cal.Rptr. 97, 534 P.2d 1001].)

---

[2]This conviction was affirmed in February 1973. (2d Crim. No. 20721.)

[3]Defendant· unaccountably claims that he is serving 17 consecutive sentences. Although invited to do so, he has never coherently explained this assertion.

■ However, at this point it appears that defendant's contentions are either moot or premature, assuming they might otherwise have merit. (See *People* v. *Keogh* (1975) 46 Cal.App.3d 919, 928-934 [120 Cal.Rptr. 817].) The Legislature this year enacted the Uniform Determinate Sentencing Act (Stats. 1976, ch. 1139.) The act provides that the crime of issuing checks without sufficient funds—formerly subject to a maximum punishment of fourteen years in prison—is now punishable by a maximum of three years in prison with a middle term of two years. (Pen. Code, § 18, as amended, ch. 1139, § 98; Pen. Code, § 476a, subd. (a), as amended, ch. 1139, § 216.) Under the act, if the judgment imposes a consecutive term, each consecutive sentence will result in imprisonment for one-third of the middle term of the term prescribed. (Pen. Code, § 1170.1a, subd. (a).) Thus, if defendant had been sentenced after chapter 1139 took effect, it appears that his total sentence would have been at most three years in case No. A547941, followed by eight months each (⅓ × 2 yrs. [24 mos.]) on each of the consecutive counts in case number A263707, or a total of twenty-four months or two years in case number A263707, or a total of five years in both cases on all sentences.

We emphasize at this point that this calculation is not intended to be definitive or binding; the point is, under the new act a sentence of some 53 years from the date of confinement is unlikely if not impossible.

The Uniform Determinate Sentencing Act will, generally, have retroactive application. Penal Code section 1170.2, subd. (a) provides that in the "case of any inmate sentenced for a felony to state prison prior to the effective date of this section, . . . the Community Release Board shall determine what the length of time of imprisonment would have been under Section 1170 . . . utilizing the middle term of the offense bearing the longest terms of imprisonment of which the prisoner was convicted aggregated by any additional terms which were imposed by the court at the time of sentencing for such felony or aggravation."

This does not mean that defendant or any other person sentenced prior to the effective date of the new act will automatically be released if the sentence under the new act exceeds the time served under former legislation. The Community Release Board is authorized to determine "that due to the number of crimes the prisoner was convicted of, or due to the number of prior convictions the prisoner has been convicted of, . . . the prisoner should serve a term longer than that calculated in subdivision (a) . . . ." (§ 1170.2, subd. (b).) Thus, in theory, defendant's

release date of 2024 could remain. This seems unlikely, however, given the drastic reduction in punishment for a violation of section 476a, and we deem it appropriate not to decide whether defendant's punishment is grossly excessive until his sentence has been reconsidered under the new law by the Community Release Board.[4]

We therefore dismiss the appeal from the denial of the writ of *coram nobis* and deny the petition for writ of habeas corpus.

Ashby, J., and Hastings, J., concurred.

A petition for a rehearing was denied February 17, 1977, and appellant's petition for a hearing by the Supreme Court was denied March 17, 1977.

---

[4]In light of our disposition, we need not discuss defendant's history of numerous convictions for writing bad checks. We note that according to a case summary prepared at the California Institution for Men, defendant indicated the possibility that he might not return to his profession of writing bad checks, because he could live on the interest from his investments of the proceeds of his activities, although his goal of $30,000 a year in interest income had not quite been achieved when he was apprehended.