[Crim. No. 17048. First Dist., Div. One. Mar. 15, 1978.]

In re DAVID BROWN on Habeas Corpus.

**COUNSEL**

David Brown, in pro. per., for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, William D. Stein and David Schneller, Deputy Attorneys General, for Respondent.

OPINION

CALDWELL, J.*—On February 27, 1977, David Ray Brown, a prisoner in San Quentin State Prison, filed a petition for habeas corpus in the Superior Court of Marin County contending that the penalty provision of the statute under which he was sentenced was unconstitutional insofar as it provided for a three-year minimum period for eligibility for parole. The People have appealed from an order of the trial court invalidating the three-year provision, and the trial court stayed execution of its order pending this appeal. All of the proceedings in the trial court were completed before July 1, 1977, the operative date of California's new Uniform Determinate Sentencing Act of 1976, hereinafter referred to as the Act. (Stats. 1976, ch. 1139; Pen. Code, § 1170 et seq.)

On September 26, 1975, petitioner was sentenced to prison by the Superior Court of San Bernardino County for the term prescribed by law after conviction for transportation of marijuana, a violation of section 11360 of the Health and Safety Code, and for conspiracy to transport marijuana, a violation of section 182 of the Penal Code, considered together with section 11360 of the Health and Safety Code. The commitment on the transportation conviction was stayed pending completion of the conspiracy sentence, the stay then to become permanent. Petitioner was received by the Department of Corrections on December 4, 1975, and on January 14, 1976, the department computed that petitioner's minimum eligible parole date, with credit for time served, would be September 15, 1978. On January 26, 1976, he was received in San Quentin. He asserts that he has never had a parole date set.

Section 182 of the Penal Code provided, both before and after July 1, 1977, that punishment for conspiracy to commit a felony of the type involved here was to be the same as the punishment for the felony itself. At the time petitioner was convicted and sentenced section 11360, subdivision (a), of the Health and Safety Code provided that punishment for a first conviction for transporting marijuana was imprisonment "for a period of five years to life" and specified that the person "shall not be eligible for release . . . on parole . . . until he has been imprisoned for a period of not less than three years in the state prison." Minimum eligible parole dates of five or ten years were provided for persons convicted under section 11360, subdivision (a) who had previously been convicted

---

*Assigned by the Chairperson of the Judicial Council.

of certain enumerated offenses. Petitioner had not previously been convicted of any such offense.

The trial court determined that the three-year minimum eligibility period for parole was unconstitutional, citing *In re Foss* (1974) 10 Cal.3d 910 [112 Cal.Rptr. 649, 519 P.2d 1073], *In re Grant* (1976) 18 Cal.3d 1 [132 Cal.Rptr. 430, 553 P.2d 590], and *People* v. *Vargas* (1975) 53 Cal.App.3d 516 [126 Cal.Rptr. 88]. These cases held that certain minimum terms of imprisonment prescribed by various provisions of the Health and Safety Code were disproportionate to the offenses and therefore constituted cruel or unusual punishment in violation of article I, section 6, of the California Constitution. The trial court further ruled that the unconstitutional three-year provision was severable from the remainder of section 11360, subdivision (a), and that petitioner's sentence of five years to life was valid but that petitioner's parole eligibility should be set under section 3049 of the Penal Code instead of under the invalidated portion of section 11360, subdivision (a). Under the pre-July 1, 1977, version of section 3049 of the Penal Code, petitioner's minimum term period of eligibility would have been 20 months instead of 3 years.

The People contend that the trial court erred in holding the penalty provision unconstitutional. They assert that it may be implied from the record that the court relied upon a "hypothetical anomaly" that is not of constitutional significance and that petitioner has no standing to contest the matter.

■ We have concluded that the adoption of the new Act in 1976 applied retroactively so as to render premature, if not moot, the decision of the trial court. This is true, as we shall see, even though the Act did not become operative until after the judgment of conviction was final and after the making of the order appealed from herein.

Section 1170.2, subdivision (a), of the Penal Code, adopted as part of the new Act, provides in part: "In the case of any inmate who committed a felony prior to July 1, 1977, and who would have been sentenced under Section 1170 if he had been committed after July 1, 1977, the Community Release Board shall determine what the length of time of imprisonment would have been under Section 1170 without consideration of good-time credit and utilizing *the middle term* of the offense bearing the longest term of imprisonment of which the prisoner was convicted increased by any enhancements justified by matters found to

be true and which were imposed by the court at the time of sentencing for such felony. . . ." (Italics added.)

The Act further provides that such a prisoner who committed a felony prior to July 1, 1977, is entitled to credit from July 1, 1977, under the "good behavior and participation provisions" of the Penal Code (Pen. Code, §§ 1170.2, subd. (d), 2930 et seq.) and that nothing in section 1170.2 shall be deemed to keep him in prison for a period longer than he would have been kept in custody under the law as it existed prior to July 1, 1977. (Pen. Code, § 1170.2, subd. (c).)

Subdivision (a) of section 1170.2 is, by its terms, specifically applicable to petitioner, because he committed a felony prior to July 1, 1977, and would have been sentenced under section 1170, the basic provision of the Act, if he had been committed after that date.[1]

The People contend that the Act may not be applied retroactively to petitioner because his conviction was final before July 1, 1977, citing *In re Estrada* (1965) 63 Cal.2d 740, 744 et seq. [48 Cal.Rptr. 172, 408 P.2d 948]; and *People* v. *Rossi* (1976) 18 Cal.3d 295, 298-300 [134 Cal.Rptr. 64, 555 P.2d 1313]. Both *Estrada* and *Rossi* held that statutes reducing or eliminating punishment should be construed to apply to crimes committed before those new enactments where judgments of conviction had not become final. In *Estrada,* the court stated, "The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final." (63 Cal.2d at p. 745; see *People* v. *Rossi, supra,* 18 Cal.3d at pp. 298-299.) Unlike the situation presented here, the court in *Estrada* and *Rossi* was not faced with a statute which was expressly made retroactive nor with a judgment which had become final.

[1]It is necessary to examine various provisions of the new Act to determine whether a convicted person "would have been sentenced under section 1170 if he had been committed after [July 1, 1977]." (Pen. Code, § 1170.2, subd. (a).) Section 1170, subdivision (a)(2), provides for standards for sentencing a convicted defendant under numerous statutes referred to as prescribing "a term of imprisonment in the state prison of 16 months, two or three years; two, three or four years; three, four or five years; five, six or seven years, or any other specification of three time periods, . . ." Subdivision (a) of section 11360 of the Health and Safety Code, under which petitioner was convicted, was revised by the Act to eliminate both the former sentence of five years to life and the specific minimum period of three years for parole eligibility complained of by petitioner. Instead, the Legislature substituted a prison term of "two, three or four years." Under subdivision (a) of section 1170.2, as we have seen, the Community Release Board is required to utilize the *middle* term of this provision, i.e., three years, in determining the length of time of imprisonment of persons such as petitioner.

The contention made by the People was rejected in *Way* v. *Superior Court* (1977) 74 Cal.App.3d 165, 179-180 [141 Cal.Rptr. 383], where the court concluded that the finality of judgments rule did not preclude the Determinate Sentencing Act from operating retroactively as to prisoners whose convictions had become final before its operative date. (Petition for hearing was denied by the California Supreme Court on Dec. 22, 1977.) The court in *Way,* after citing *Estrada,* and similar cases, declared that its conclusion was not inconsistent with the *Estrada* rule. At page 180 it stated: "The distinction is that in this case final judgments will be reduced only as an incident of a major and comprehensive reform of an entire penal system. In view of the legislative objective, the final judgment rule must yield." (Cf. *In re Kapperman* (1974) 11 Cal.3d 542, 550 [114 Cal.Rptr. 97, 522 P.2d 657] [applying benefits of a new law to prisoners "regardless of the date of their commitment to state prison."].) The *Estrada* rule was also held inapplicable to the new Act in *People* v. *Alcala* (1977) 74 Cal.App.3d 425 [141 Cal.Rptr. 442], but there the judgment had not yet become final. We agree with both the conclusion and the reasoning of *Way* v. *Superior Court, supra,* 74 Cal.App.3d 165, 179-180, and it follows that section 1170.2 of the Penal Code is controlling as to the length of time of petitioner's imprisonment.

■ Section 1170.2 does not direct that a prisoner who committed a felony prior to July 1, 1977, be resentenced, and the original sentence "for the term provided by law" imposed in September 1975 remains valid. (*People* v. *Alcala, supra,* 74 Cal.App.3d 425.)

■ The next step to be taken, in accordance with section 1170.2, subdivision (a), is a determination by the Community Release Board of what petitioner's length of time of imprisonment should be. This determination must be made by the board, as stated above, upon the basis of the applicable provisions of the Act.

The board may properly consider the older law only insofar as it is pertinent in applying the provisions in Penal Code section 1170.2, subdivision (c), that nothing in this section shall be deemed to keep an inmate in custody longer than he "would have been" kept in custody under the former law. There appears to be no basis for a determination now that petitioner "would have been" imprisoned for a shorter time under the old law than under the new Act. As stated above, former section 11360, subdivision (a), of the Health and Safety Code provided for a prison term of five years to life, with three years minimum for parole eligibility, whereas the Act declares three years to be the term to

be utilized by the board in fixing the length of imprisonment of a person such as petitioner. (See fn. 1, *ante.*) Even if the former 3-year minimum for parole eligibility were declared unconstitutional, as petitioner requests, resulting in a 20-month minimum eligibility period under former section 3049 of the Penal Code, there is no reason to assume that petitioner "would have been" released on parole at the expiration of this *minimum* period.

Our conclusion that we should not now determine the constitutionality of former section 11360, subdivision (a), is supported by the recent case of *People* v. *Reece* (1977) 66 Cal.App.3d 96, 99-100 [135 Cal.Rptr. 754]. There the trial court in 1971 imposed consecutive prison sentences upon the defendant for issuing checks without sufficient funds. In May 1976, the defendant filed a petition for habeas corpus contending that he was being subjected to cruel or unusual punishment. The Court of Appeal in January 1977, relying upon the as yet inoperative new Act, denied the petition upon the ground that the contentions were "either moot or premature." The court reasoned that under the retroactive provisions of the Act, the Community Release Board would have the authority to determine the length of imprisonment for such a person and that "we deem it appropriate not to decide whether defendant's punishment is grossly excessive until his sentence has been reconsidered under the new law by the Community Release Board." (*People* v. *Reece, supra,* 66 Cal.App.3d 96, 100.)

Because the Act is now operative, the board is now in a position to make the required determination and fix the length of petitioner's imprisonment. If the board fails to do so within a reasonable time, or if petitioner should feel that the release date set by the board results in a disproportionate punishment or is otherwise improper, he may again seek relief in the courts.

The judgment is reversed, and the matter is remanded to the trial court with directions to order the Community Release Board to promptly determine petitioner's length of time of imprisonment pursuant to the provisions of the Uniform Determinate Sentencing Act of 1976.

Racanelli, P. J., and Elkington, J., concurred.